**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

BRADLEY H. SCHLEIER, ESQ. #011696
Email: brad@schleierlaw.com
TOD F. SCHLEIER, ESQ. #004612
Email: tod@schleierlaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Peterson, a married man, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **(Jury Trial Demanded)** |
| City of Sedona, municipal corporation; Brenda Tammarine, a married woman; Karen Daines-Osburn, a married woman, | |
| Defendants. | |

Plaintiff, by and through counsel, for his Complaint against Defendant, alleges:

**I. NATURE OF CLAIM**

1. This is a proceeding against Defendants City of Sedona, Brenda Tammarine and Karen Daines-Osburn for deprivation of due process rights due to Plaintiff (42 U.S.C. §1983), and violation of the Family and Medical Leave Act, 29 U.S.C. §2611 *et seq.* ("FMLA").

## II. JURISDICTION AND VENUE

2. This action arises under the Constitution of the United States, specifically the Fourteenth Amendment thereto, and under the laws of the United States, specifically the Civil Rights Act, 42 U.S.C. § 1983.

3. This court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) as this is an action for deprivation of property without due process of law, actionable under 42 U.S.C. § 1983 and violation of the FMLA.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims because said claims are so related to Plaintiff's federal claim that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367.

5. Venue is appropriate in this court because all of the events complained of took place in Yavapai County, Arizona, within the Prescott Division of this Court.

## III.   PARTIES

6. Plaintiff Brian Peterson ("Plaintiff") is a Caucasian male who resides in Cottonwood, Arizona. Plaintiff was a former employee of Defendant City of Sedona as set forth herein and as defined by the FMLA.

7. Defendant City of Sedona ("Sedona") is a municipal corporation organized pursuant to the laws of the State of Arizona and was Plaintiff as set forth herein and a defined by the FMLA.

8. Defendant Brenda Tammarine ("Defendant Tammarine") is a married woman who resides in Camp Verde. All actions with regard to Plaintiff were done on her own behalf and on behalf of her marital community, and were done within the course and scope of her

authority as Human Resources Manager for Sedona. All of the actions of Defendant Tammarine hereinafter described were done in bad faith, were willful and wanton and/or grossly negligent.

9. Defendant Karen Daines-Osburn ("Defendant Daines") is a married woman who resides in Sedona area. All actions with regard to Plaintiff were done on her own behalf and on behalf of her marital community, and were done within the course and scope of her authority as Assistant City Manager with the City of Sedona. All of the actions of Defendant Daines hereinafter described were done in bad faith, were willful and wanton and/or grossly negligent.

### IV. FACTUAL BACKGROUND

10. Plaintiff Peterson began his employment with the City of Sedona on or about August 18, 2014. Plaintiff Peterson was hired as a Senior Accountant, and reported to Finance Director, Tabatha Miller. Plaintiff Peterson had never worked for a municipality prior to August, 2014.

11. Upon his hire, Plaintiff Peterson's job duties included: payroll, accounts payable, bank reconciliations, tax reports, general ledger reconciliation and maintenance, fixed assets, investment tracking and reconciliation, generate and post journal entries, assist with budget process, preparation of financial statements and audit preparation, and sales tax audit billings. Prior to August 2015, Plaintiff Peterson had no indication there were any issues with his job performance.

12. In July, 2015, Ms. Miller advised Plaintiff Peterson of her plan to submit her resignation that month with a departure date that would coincide with the end of the annual audit in September. In anticipation of her exit, Ms. Miller began to have discussions with Plaintiff Peterson about the expectation that he would be forced to take over many of the duties the Finance Director was performing.

13. Plaintiff Peterson expressed his concerns of being responsible for his own duties, and also the duties of Finance Director – a position which he had never held and had not been properly trained to perform.  Despite those discussions, Ms. Miller sent an email to Plaintiff Peterson on August 11, 2015, setting forth a whole new list of job duties and responsibilities.

14. The August 11, 2015 email stated the expectation that Plaintiff Peterson would now be responsible for completing the monthly reports, update them each month, post them to the website and email to anyone interested.  The email sets forth numerous other new responsibilities that he would now be responsible to report.  Though rather lengthy, the email added the following new additional duties including but not limited to:  quarterly RICO report; annual Development Impact Fee report; managing account and task codes; purchasing card coding; preparing all necessary accounting and journal entries; budget adjustments; completion of the 2015-2016 Budget Document; preparation of a refund of the 2007 debt series; responding to all department reports, questions, reviews and requests; insuring that all compliance requirements are met; and preparing sales tax audits.   For many of these items, Plaintiff Peterson did not receive any training nor did he have prior background experience.

15. It is clear Plaintiff Peterson's new job duties made a huge jump from duties of Senior Accountant to that of Finance Director. This enormous leap came without information about when a new Finance Director might be hired.  In fact, as mentioned in Ms. Miller's email, "most, if not all of these tasks will remain with you."

16. With all of these extraordinary changes, Plaintiff Peterson began to experience increased stress at work in the summer of 2015.  The increased stress was the result of the audit, Ms. Miller's anticipated resignation, and the expected new work duties. Plaintiff Peterson increased his work hours, not just in the number of extra hours per workday, but also

by sometimes working 7 days a week.  The increased work hours and stress began to take an emotional and physical toll on Plaintiff Peterson.

17. On August 20, 2015, Plaintiff Peterson sought medical attention from his family physician, Dr. James Arthur. Dr. Arthur performed a thorough examination, and determined that Plaintiff Peterson needed to be placed on short term disability immediately.

18. The progress note indicates Plaintiff Peterson was not required to return to his physician for six weeks.  Plaintiff Peterson showed the doctor's note for short term disability to Ms. Miller, who asked Plaintiff Peterson to complete work on August 21 before starting his leave.  Plaintiff Peterson agreed, and worked through the end of the day on August 21.

19. Plaintiff Peterson also submitted the doctor's note to Defendant Tammarine in Human Resources. Dr. Arthur completed the necessary forms for Family Medical Leave Act ("FMLA") clearly indicating "situational stress/anxiety/depression" and that Plaintiff Peterson needed to be off work from August 20 through September 30, 2015.

20. Plaintiff Peterson qualified for FMLA leave as he had been employed for a year and met the qualifications for leave under the statute.

21. Defendant Tammarine sent a confirming letter dated August 21, 2015 which did not indicate Plaintiff Peterson was a probationary employee, or that he was not eligible for FMLA.

22. Apparently, on August 31, 2015, Defendant Tammarine spoke "at length" with Dr. Arthur about Plaintiff Peterson's FMLA forms.  Plaintiff Peterson was unaware of any issues relating to the information provided by Dr. Arthur, any such conversation between Defendant Tammarine and Dr. Arthur, and had not given permission to anyone at the City of Sedona to contact his physician or make any inquiries.

23. At the time of the inquiry, Defendant Tammarine was also acting in the role of Plaintiff's supervisor as she was involved in issues relating to Plaintiff's job performance and assignments.

24. Defendant Tammarine again spoke with Dr. Arthur on September 2, 2015. This again was done without any permission or awareness of Plaintiff Peterson

25. Plaintiff Peterson received documentation dated September 3, 2015 that his FMLA had been approved. The job description attached to the FMLA approval is that of Senior Accountant, but no mention is made of the additional new duties and responsibilities that Plaintiff Peterson had been advised he would assume.

26. Plaintiff Peterson also received another letter from Defendant Tammarine dated September 3, 2015 confirming his eligibility for FMLA. The letter also indicated she had a "followup phone call" with Dr. Arthur, and that during that call Dr. Arthur indicated Plaintiff Peterson may be able to return to work early with a modified work schedule. Again, Plaintiff Peterson was unaware of any phone calls between his physician and Defendant Tammarine. More importantly, Plaintiff Peterson did not give permission to Defendant Tammarine to contact his physician at any time.

27. On September 3, 2015, upon the direction of Defendant Tammarine, Plaintiff Peterson returned to Dr. Arthur for examination based on information told to him by Defendant Tammarine. At that time, Dr. Arthur recommended Plaintiff Peterson could work part time, a 5-hour day as opposed to a 10-hour day, four days a week.

28. Plaintiff Peterson submitted the new doctor's note to Defendant Tammarine and returned to work on September 14, 2015. Plaintiff Peterson's new schedule was 11:00 AM until 4:00 PM. With this limited schedule and the additional job duties, there was no accommodation for Plaintiff Peterson's workload as he continued on intermittent FMLA leave while working his way back to full-time status.

29. On September 24, 2015 at 3:00 PM, Plaintiff Peterson was called into the conference room with Defendant Tammarine and Assistant City Manager, Defendant Daines, and informed the City of Sedona was terminating his employment.

30. Plaintiff Peterson was simply told the City was "choosing to let him go as he was a probationary employee." The termination letter incorrectly stated Plaintiff Peterson was "a probationary employee."

31. Plaintiff Peterson had completed the one-year probationary period and at no time was he informed that he was still a probationary employee.

32. Sedona has policies and procedures that guarantee permanent employees like Plaintiff Peterson job protections from terminations without "cause" and procedural protections such as pre- and/or post job deprivation hearings.

33. As a permanent employee, Plaintiff Peterson was not offered, nor provided a Pre- and/or Post-Termination hearing before being removed from his protected position.

34. Moreover, Defendant Sedona did not have "cause" to terminate his employment.

**FIRST CLAIM FOR RELIEF**

**(Violation of Due Process, 42 U.S.C. § 1983)**

35. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

36. The law was clearly established during the actions referenced in this Complaint that involuntarily terminating an employee with a property right in his job, without due process, violated the law and constituted a deprivation of a constitutional right.

37. As Sedona employees, Defendants Tammarine and Daines acted "under color" of state law when they terminated Plaintiff's permanent employment status without "cause" and without offering or providing a pre- and/or post termination hearing (due process).

38. As a regular, non-probationary employee of Defendant Sedona, Plaintiff had a property interest in his employment derived from Sedona's employment rules and regulations as well as state law.

39. As a regular, non-probationary public employee who could only be terminated for cause, Plaintiff was entitled to due process in the form of notice, and pre-termination and/or post-termination hearings to assess whether cause existed for his termination.

40. Defendants Sedona, Tammarine, and Daines violated the Fourteenth Amendment to the United States Constitution by involuntarily terminating Plaintiff's employment without due process, thereby depriving Plaintiff of his property interest in continued employment with Defendant Sedona.

41. Plaintiff was denied due process by terminating his employment without a meaningful opportunity to be heard. He was not provided with a pre-termination or post-termination hearing or opportunities to present evidence or cross-examine witnesses. A post-termination hearing includes the right to counsel and the right to cross-examination. An impartial hearing officer is an essential element of a due process hearing. None of these procedural safeguards were provided to Plaintiff before or after the property interest he held in his employment with Defendant Sedona was involuntarily taken from him.

42. Defendants Tammarine and Daines' conduct was willful, wanton, and malicious or in reckless disregard of Plaintiff's federally protected rights, entitling him to an award of punitive and exemplary damages.

43. As a direct and proximate result of Defendants' conduct, Plaintiff has been and continues to be harmed in that he has suffered loss of salary and other benefits of full employment, inconvenience, loss of enjoyment of life, damage to his reputation and embarrassment.

44. Under 42 U.S.C. § 1983, Defendants are liable to Plaintiff for the above-described violations of his constitutional rights. Plaintiff is entitled to all rights, remedies, in law or in equity, available to him under 42 U.S.C. § 1983. Plaintiff has suffered humiliation, degradation, and pain and suffering. Plaintiff has suffered a substantial loss of income in the form of past, present, and future wages because of Defendants' unconstitutional practices.

45. Plaintiff is entitled to an award of attorneys' fees for Defendants' violation of Plaintiff's due process rights as protected 42 U.S.C. §1983 and 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF

### (Violation of the FMLA)

46. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

47. Defendants by its actions are employers obligated to conform with the FMLA.

48. Plaintiff is considered a covered employee under the FMLA.

49. Defendant Tammarine violated the FMLA by contacting Plaintiff's physician on multiple occasions without any need or permission from Plaintiff.

50. Defendant Tammarine's discussions with Plaintiff's physician violated Plaintiff's rights and did not follow procedures required by the FMLA. *See* 29 C.F.R. §825.305 and 825.307.

51. The decision to terminate Plaintiff's employment was done with the purpose of thwarting Plaintiff's use of his FMLA rights and in retaliation for Plaintiff utilizing his FMLA rights.

52. As a direct and proximate result of Defendants' multiple violations of the FMLA, Plaintiff has suffered economic damages in the form of lost wages and the value of job benefits.

53. Defendants' violation of the FMLA was willful thereby entitling Plaintiff to an award of liquidated damages.

54. Plaintiff is entitled to an award of attorneys' fees incurred in pursuing his claim under the FMLA.

**WHEREFORE,** Plaintiff demands judgment against Defendants, and each of them, as follows:

1. Equitable relief including but not limited to job reinstatement and payment of all back-pay and value of last benefits;

2. Actual damages be awarded to Plaintiff and against Defendants in the form of back pay, future lost pay, and the value of benefits to be proven at trial;

3. Liquidated damages as provided by the FMLA;

4. Punitive and exemplary damages to be proven at trial against Defendants Tammarine and Daines;

5. Plaintiff be awarded his attorneys' fees;

6. Plaintiff be awarded his costs of suit; and

7. Plaintiff be awarded all other relief that this Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 12th day of September, 2017.

                SCHLEIER LAW OFFICES, P.C.

                /s/ Bradley H. Schleier
                Bradley H. Schleier
                Attorney for Plaintiff